**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN E. BOISE, JR.,<br>Plaintiff,<br>v.<br>CHARTWELL PHARMACEUTICALS LLC,<br>Defendant. | Civil Action No. 25-8407<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, John E. Boise, Jr. ("Plaintiff Boise"), by way of complaint against Defendant, Chartwell Pharmaceuticals LLC ("Defendant Chartwell"), says:

**THE PARTIES**

1. Plaintiff Boise is a New Jersey citizen residing at 146 Livingston Street, Northvale, New Jersey 07647.

2. Upon information and belief, Defendant Chartwell is a Delaware corporation with its principal place of business located at 77 Brenner Drive, Rockland County, Congers, New York 12920.

**JURISDICTION AND VENUE**

3. This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a)(2) because Plaintiff Boise and Defendant Chartwell are citizens of different States and the amount in controversy exceeds the sum or value of $75,000.

4. Venue is proper in this Judicial District because Defendant Chartwell resides in this District and it is where a substantial part of the events or omissions giving rise to Plaintiff Boise's claims occurred. See 28 U.S.C. § 1391(b).

5. Defendant Chartwell is subject to this Court's personal jurisdiction.

## THE NATURE OF THE ACTION

6. This is an employment retaliation claim under the New York Labor Law Section 740(2)(c) based on Plaintiff Boise's wrongful termination resulting from his protected complaints to upper management regarding Defendant Chartwell's widespread and egregious FDA and safety violations. Defendant Chartwell, established in 2010, is an FDA-regulated pharmaceutical company that produces millions of capsules and tablets in its facilities. As detailed, Plaintiff Boise is an experienced and highly trained maintenance and engineering executive who personally witnessed and repeatedly complained about widespread and illegal operations involving the highest levels of management at Defendant Chartwell. Most egregiously, Defendant Chartwell has been and continues to engage in an illegal debulking operation where it collects expired pharmaceutical products -- from itself as well as other manufacturers -- repackages those expired products, and relabels them with a new label and expiration date. This illegal operation is openly conducted after-hours at Defendant Chartwell. Despite Plaintiff Boise's repeated attempts to correct and complain about those conditions, Defendant Chartwell failed to take any action and continued with its illegal and unsafe operations. Plaintiff Boise was terminated as a result of his protected activities in violation of Section 740.

## COMMON ALLEGATIONS

7. On or about October 18, 2021, Plaintiff Boise was hired by Defendant Chartwell.

8. Throughout his employment at Defendant Chartwell, Plaintiff Boise's supervisor was Eric Farkas ("Farkas"), Vice President Engineering and Maintenance.

9. Mr. Farkas reported to Jack Goldenberg ("Goldenberg") who, upon information and belief, is an owner and/or managing partner of Defendant Chartwell.

10. As detailed below, Plaintiff Boise personally observed and objected to numerous Defendant Chartwell business and manufacturing processes that violated 21 C.F.R. Parts 210 and 211, Good Manufacturing Practice, as well as other laws involving adulterated, contaminated and mislabeled pharmaceuticals.

11. Defendant Chartwell engages in an illegal "debulking" operation in which its employees openly and after-hours remove expired product from its container, collect it in a drum, and then repackage that expired product with a new label and expiration date.

12. Upon information and belief, under its "Returned Goods Policy," Chartwell procures expired products that it uses in this operation.

13. In addition to its own expired products, Defendant Chartwell also debulks expired products from outside companies and repackages and relabels them with a new expiration date.

14. These illegal debulking operations are openly performed in an aisle of the warehouse after hours by hourly, unskilled employees.

15. None of these debulked products are tested.

16. The integrity and purity of these products are compromised.

17. This debulking operation not only threatens the safety of persons taking the expired product, but also is an act of selling misbranded and/or adulterated products.

18. Plaintiff Boise repeatedly complained about this illegal debulking operation.

19. Plaintiff Boise possesses Defendant Chartwell Ramipril capsules USP 10 mg Lot 770866B with an expiration date of 12/2024 that he removed from being illegally debulked, repackaged and falsely relabeled.

20. Upon information and belief, the FDA investigated Defendant Chartwell for having products with the same lot number but different expiration dates that were a byproduct of the debulking operation.

21. This investigation was based on a customer complaint regarding the sale of expired drugs.

22. In addition, Defendant Chartwell uses contaminated ingredients in its production operations that violate cGMP.

23. Defendant Chartwell collects product waste in vacuums and dust collectors, scrapes product waste off machine surfaces, and scoops product waste off of the floor and then reintroduces this product waste directly into the batches -- most times without any additional processing -- causing contaminated and adulterated batches.

24. Plaintiff Boise repeatedly complained about these unsafe and illegal manufacturing practices to Mr. Farkas who failed to address them.

25. Upon information and belief, Plaintiff Boise hired an experienced mechanic, Christian Pasciolla ("Pasciolla").

26. In his first week of work, Mr. Pasciolla personally observed an employee scoop a product off the floor and place it directly back into the batch blender.

27. Mr. Pasciolla complained to Plaintiff Boise about the incident and quit on the spot because of Defendant Chartwell's illegal operations.

28. When Plaintiff Boise informed Mr. Farkas of the situation, he responded words to the effect, "it was what it is; we don't own the company. Jack does."

29. In a related operation, Defendant Chartwell repackaged Amoxycillin at night in the warehouse and then, a few days later, performed a clinical trial on its baby formula in the

same warehouse without any cleaning or decontamination thus risking contamination of baby formula.

30. This conduct violated cGMP and placed the adolescent participants' health at risk.

31. Defendant Chartwell illegally disposes of its hazardous wastes directly into the regular commercial waste stream without any accountability or segregation in violation of the law.

32. Defendant Chartwell also releases alcohol fumes directly into the air in violation of a local ordinance as well as state and federal law.

33. When Plaintiff Boise complained about these practices, he was told that Mr. Goldenberg wanted to save money and that the company's waste was non-hazardous (which is false).

34. Upon information and belief, Defendant Chartwell's disposal practices violate the Resource Conservation and Recovery Act ("RCRA").

35. Defendant Chartwell's 150 Wells Avenue Amoxicillin site contains multiple violations of cGMP.

36. Defendant Chartwell does not purchase or use disposable uniforms for its manufacturing employees; instead, employees use the same contaminated uniforms from the main plant at 77 Brenner Drive.

37. Defendant Chartwell also moves equipment back and forth between Defendant Chartwell's manufacturing sites without any cleaning to prevent cross-contamination.

38. The 150 Wells Avenue site improperly stored empty capsule gels, active ingredients as well as work-in-progress and finished products in uncontrolled locations.

39. Plaintiff Boise's complaints to Mr. Farkas about these business practices were ignored and went unaddressed.

40. In December 2024, Defendant Chartwell was being audited by the FDA for a pre-approval of the Amoxicillin plant.

41. During the audit, the FDA requested certain documents (which were technical violations of FDA regulations) from Defendant Chartwell that did not exist.

42. In connection with the FDA request, Mr. Goldenberg directed Plaintiff Boise to fraudulently create and back date those documents.

43. Plaintiff Boise refused that illegal request.

44. On the heels of that incident, Plaintiff Boise noticed a cGMP violation in the Amoxicillin plant as a result of the capsule polisher and metal detector being intentionally removed from the packaging line to speed up the production process.

45. Plaintiff Boise reported this illegal modification to Mr. Farkas who failed to address it.

46. A few days later, Plaintiff Boise was summoned to Mr. Goldenberg's office who told him, "to mind his own business and let the quality department be responsible for the violations."

47. This comment by the managing member of Defendant Chartwell is evidence of retaliatory motive and animus.

48. On April 22, 2025, Plaintiff Boise was terminated because, according to Defendant Chartwell, there was a restructuring and his job was eliminated.

49. However, following Plaintiff Boise's termination, he was replaced by another employee who assumed his duties and responsibilities.

50. Upon information and belief, no other employees were terminated at the same time as Plaintiff Boise.

51. At the time of Plaintiff Boise's termination, there were no performance issues whatsoever to justify his termination.

52. In or around March 2025, Defendant Chartwell terminated Plaintiff Boise's daughter without cause and for retaliatory reasons.

53. Following his termination, Plaintiff Boise was contacted on several occasions by Defendant Chartwell's attorney to discuss a severance.

54. During those discussions, Defendant Chartwell's attorney told Plaintiff Boise that Defendant Chartwell performed a due diligence investigation of his employment ***after his termination*** and claimed that he made an inappropriate comment about one employee to another employee who apparently taped the call.

55. This *post hoc* investigation not only confirms the pretextual nature of Plaintiff Boise's termination, but also is an act of retaliation meant to coerce and intimidate Plaintiff Boise from pursuing his rights.

**COUNT ONE**
**(Violation Of New York Labor Law, Section 740(2)(c))**

56. Plaintiff Boise repeats and realleges the previous paragraphs as though set forth at length herein.

57. Plaintiff Boise reasonably believed that Defendant Chartwell's business and manufacturing operations violated local, state and federal law, including 21 C.F.R. Parts 210 and 211.

58. Plaintiff Boise repeatedly objected and protested about that illegal conduct to his supervisors and otherwise refused to participate in the illegal conduct.

59. Defendant Chartwell's supervisors were hostile and otherwise indifferent to Plaintiff Boise's complaints.

60. Defendant Chartwell engaged in a pattern of retaliatory conduct toward Plaintiff Boise.

61. On the heels of those complaints, Plaintiff Boise was terminated for false and pretextual reasons.

**WHEREFORE**, Plaintiff Boise demands judgment against Defendant Chartwell as follow:

a. Uncapped compensatory damages, including back pay and front pay;

b. Personal physical injury and exacerbation thereof;

c. Loss of reputation and career loss;

d. Uncapped punitive damages;

e. Negative tax consequences of any verdict or judgment;

f. Interest;

g. All attorneys' fees, costs of suit and expenses; and

h. Any other relief the Court deems just and fit.

Dated: New York, New York
October 10, 2025

**BARBER LAW, LLC**

By: ______________________
Patrick Lucignani
Attorneys for Plaintiff
420 Lexington Avenue, Suite 300
New York, NY 10170

98 Washington Street
Morristown, NJ 07960
Phone: (973) 401-0064

plucignani@kbarberlaw.com